# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DAMIEN M. AINSWORTH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 16-cv-03933-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re: ECF 22, 25] |

Plaintiff Damien M. Ainsworth appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asks the Court to reverse the Commissioner's decision and remand for further administrative proceedings. Before the Court are the parties' cross-motions for summary judgment, which have been fully briefed.[1]

The Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion, DENIES Defendant's motion, REVERSES the denial of benefits; and REMANDS for further administrative proceedings.

## I. BACKGROUND

Plaintiff was born on December 27, 1971. Administrative Record ("AR") 138. He was 39 years old on the alleged disability onset date, making him a "younger" individual under the Social Security regulations. AR 64; *see also* 20 C.F.R. § 404.1563(c) (defining "younger person" to be a person under the age of 50). Plaintiff attended a junior college for four years and then a state

---

[1] The motions were submitted without oral argument pursuant to Civil Local Rule 16-5.

1    college for an additional three years, and he has past relevant work as an account information clerk

2    and a telephone solicitor.  AR 42, 59.

3        Plaintiff claims disability beginning May 1, 2011 due to several impairments, including

4    bipolar disorder, a polysubstance use disorder, and a gastrointestinal condition.  AR 21.  After his

5    application for benefits was denied initially and upon reconsideration, Plaintiff requested and

6    received a hearing before an administrative law judge ("ALJ"), which was held on August 18,

7    2014.  *Id.*  After hearing testimony from Plaintiff, Plaintiff's mother, and a vocational expert

8    ("VE"), the ALJ issued a written decision finding that Plaintiff was not disabled through the

9    decision date and thus was not entitled to benefits.  AR 19-33.  The Appeals Council affirmed the

10   ALJ's decision, making it the final decision of the Commissioner.  AR 1-3.

11   **II.    LEGAL STANDARD**

12       **A.    Standard of Review**

13       Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon

14   the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

15   decision of the Commissioner of Social Security, with or without remanding the cause for a

16   rehearing."  42 USC § 405(g).  However, "a federal court's review of Social Security

17   determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

18   Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and

19   resolve ambiguities in the record.'"  *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775

20   F.3d 1090, 1098 (9th Cir. 2014)).

21       A court "will disturb the Commissioner's decision to deny benefits only if it is not

22   supported by substantial evidence or is based on legal error."  *Brown-Hunter*, 806 F.3d at 492

23   (internal quotation marks and citation omitted).  "Substantial evidence is such relevant evidence as

24   a reasonable mind might accept as adequate to support a conclusion, and must be more than a

25   mere scintilla, but may be less than a preponderance."  *Rounds v. Comm'r of Soc. Sec. Admin.*,

26   807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted).  A court

27   "must consider the evidence as a whole, weighing both the evidence that supports and the

28   evidence that detracts from the Commissioner's conclusion."  *Id.* (internal quotation marks and

1    citation omitted).  If the evidence is susceptible to more than one rational interpretation, the ALJ's

2    findings must be upheld if supported by reasonable inferences drawn from the record.  *Id.*

3            Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long

4    as the error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  However, "[a] reviewing court may not

5    make independent findings based on the evidence before the ALJ to conclude that the ALJ's error

6    was harmless."  *Id.*  The court is "constrained to review the reasons the ALJ asserts."  *Id.*

7            **B.      Standard for Determining Disability**

8            "To determine whether a claimant is disabled, an ALJ is required to employ a five-step

9    sequential analysis, determining:  (1) whether the claimant is doing substantial gainful activity;

10   (2) whether the claimant has a severe medically determinable physical or mental impairment or

11   combination of impairments that has lasted for more than 12 months; (3) whether the impairment

12   meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

13   functional capacity, the claimant can still do his or her past relevant work; and (5) whether the

14   claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

15   Cir. 2014) (internal quotation marks and citations omitted).  The residual functional capacity

16   ("RFC") referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at

17   1160 n.5.  "The burden of proof is on the claimant at steps one through four, but shifts to the

18   Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

19   2009).

20   **III.  DISCUSSION**

21           At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

22   activity since his alleged onset date of May 1, 2011.  AR 21.  At step two, the ALJ found that

23   Plaintiff has the following severe impairments:  "a bipolar disorder, and a polysubstance use

24   disorder, in early remission."  *Id.*  The ALJ found that Plaintiff had not established the existence of

25   a medically determinable abdominal or gastrointestinal impairment, or any severe physical

26   medically determinable impairment.  AR 21-22.  At step three, the ALJ concluded that Plaintiff's

27   impairments do not meet or medically equal the severity of one of the listed impairments in the

28   regulations.  AR 22-25.

3

1          Prior to making a step four determination, the ALJ found that Plaintiff retains the RFC to

2    perform a full range of work at all exertional levels, with the following nonexertional limitations:

3    "the claimant is limited to performing work involving no more than the simple and repetitive tasks

4    characteristic of unskilled work and involving no more than limited contact with the public."  AR

5    25.  In formulating this RFC, the ALJ considered the opinions of all three mental health

6    professionals of record:  Dr. Gerald Bausek, Plaintiff's treating psychiatrist; Dr. Robert Liss, the

7    agency consultant psychologist who reviewed the record at the initial determination stage; and Dr.

8    A. Garcia, the agency consultant psychiatrist who reviewed the record at the reconsideration stage.

9    AR 30-31.[2]  The ALJ stated that he accorded "the greatest weight" to the opinions of Drs. Liss and

10   Garcia, and "little weight" to the opinions of Dr. Bausek.  AR 31.  The ALJ also considered the

11   testimony and statements of Plaintiff and Plaintiff's mother.  26, 31.

12         Based on the above RFC and the testimony of the VE, the ALJ found at step four that

13   Plaintiff could not perform his past relevant work as an account information clerk or a telephone

14   solicitor.  AR 32.  However, the ALJ concluded at step five that Plaintiff could perform other jobs

15   that exist in significant numbers in the national economy.  *Id.*  Specifically, the ALJ relied on the

16   VE's testimony that Plaintiff could work as a "linen room attendant," Dictionary of Occupational

17   Titles ("DOT") 222.387-030, or a "hand packager," DOT 920.587-018.  AR 33.  Based on that

18   testimony, the ALJ found that Plaintiff was not disabled.  *Id.*

19         Plaintiff contends that the ALJ erred in two respects.  First, Plaintiff asserts that even

20   though the ALJ gave great weight to the opinions of the agency consultants, the ALJ omitted from

21   the RFC a limitation found by both consultants, that is, a limitation to "remembering,

22   understanding and carrying out 1-2 step instructions."  *See* AR 72, 85.  Plaintiff argues that the

23   ALJ did not provide adequate reasons for omitting that limitation in favor of a less restrictive

24   limitation to "simple and repetitive tasks."  Second, Plaintiff asserts that the ALJ did not provide

25   legally sufficient reasons for rejecting the opinions of Plaintiff's treating psychiatrist.

26

27   _____

28   [2] The ALJ also considered the opinions of two agency medical consultants, Drs. A. Nasrabadi and
     R. Fast, regarding Plaintiff's claimed physical impairments.  AR 30. Those opinions are not at
     issue in this appeal.

4

**A.      Omission of the Agency Consultants' "1-2 Step Instructions" Limitation**

Plaintiff argues that the ALJ erred by rejecting the agency consultants' "1-2 Step

Instructions" limitation without legally sufficient reasons.  At the initial determination stage,

agency consultant Dr. Liss provided the following opinion with respect to Plaintiff's mental RFC:

> Capable of *remembering, understanding and carrying out 1-2 step instructions*
> with adequate concentration, persistence and pace for a normal work day/week.
>
> Able to interact with coworkers and supervisors and adapt to normal stresses in the
> work environment, but should have limited public contact.

AR 72 (emphasis added).  At the reconsideration stage, agency consultant Dr. Garcia provided the

identical opinion.  AR 85.

The ALJ recited these limitations in his written decision, AR 30, found them to be

supported by evidence in the record, AR 31, and stated that he had accorded the agency

consultants' opinions great weight, AR 31.  However, the ALJ did not include the "1-2 step

instructions" limitation in the RFC.  The ALJ instead articulated Plaintiff's nonexertional

limitations as follows:

> [T]he claimant is limited to performing work involving no more than the *simple
> and repetitive tasks* characteristic of unskilled work and involving no more than
> limited contact with the public.

AR 25 (emphasis added).

The ALJ's limitation to "simple and repetitive tasks" is less restrictive than the agency

consultants' limitation to "1-2 step instructions."  *See Dominguez v. Berryhill*, No. 16-CV-01936-

DMR, 2017 WL 3705064, at \*6 (N.D. Cal. Aug. 28, 2017) ("The court notes that a limitation to

one- and two-step instruction work is more restrictive than a limitation to simple, repetitive

tasks."); *Kimble v. Berryhill*, No. 3:15-CV-01641-JE, 2017 WL 3332256, at \*4 (D. Or. Aug. 4,

2017) ("[A] limitation to '1-2 step tasks' is more restrictive than a limitation to 'simple, repetitive

tasks.'").  The ALJ thus effectively rejected the agency consultants' opinions.  *See Kimble*, 2017

WL 3332256, at \*4 ("In professing to accept Dr. Nicoloff's opinion, but failing to include Dr.

Nicoloff's precise limitation in the RFC, the ALJ effectively rejected the doctor's opinion.").

While an ALJ may reject the opinion of a non-examining physician, he must do so "by reference

to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir.

5

1    1998). Here, the ALJ gave no reasons for – and in fact did not even acknowledge – his rejection

2    of the agency consultants' "1-2 step instructions" limitation. "Where an ALJ does not explicitly

3    reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion

4    over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The Court

5    therefore concludes that the ALJ erred in this case by rejecting the agency consultants' "1-2 step

6    instructions" limitation without pointing to specific evidence in the medical record justifying such

7    rejection.

8            Defendant suggests that the RFC articulated by the ALJ was consistent with the opinions

9    of Drs. Liss and Garcia. That suggestion is without merit in light of the numerous cases holding

10   that a limitation to "simple and repetitive tasks" is less restrictive than a limitation to "1-2 step

11   instructions." *See, e.g., Dominguez*, 2017 WL 3705064, at \*6; *Kimble*, 2017 WL 3332256, at \*4;

12   *Burson v. Berryhill*, No. 15-CV-04991-DMR, 2017 WL 1065140, at \*4 (N.D. Cal. Mar. 20, 2017);

13   *Dschaak v. Colvin*, No. 3:13-CV-02127-MA, 2015 WL 181803, at \*5 (D. Or. Jan. 14, 2015).

14           Defendant next argues that any error in rejecting the "1-2 step instructions" limitation

15   without explanation was harmless, because Dr. Bausek's treatment notes showed that Plaintiff's

16   symptoms improved after Drs. Liss and Garcia rendered their opinions. The Court understands

17   Defendant to be arguing that even if the "1-2 step instructions" limitation was appropriate at the

18   time the agency consultants rendered their opinions. the less restrictive "simple and repetitive

19   tasks" limitation was more appropriate when the ALJ rendered his decision in light of Dr.

20   Bausek's treatment notes post-dating the agency consultants' opinions. "A reviewing court may

21   not make independent findings based on the evidence before the ALJ to conclude that the ALJ's

22   error was harmless." *Brown-Hunter*, 806 F.3d at 492. The court is "constrained to review the

23   reasons the ALJ asserts." *Id.* While he certainly discussed Dr. Bausek's treatment notes, the ALJ

24   did not cite the treatment notes as a reason for rejecting the agency consultant's opinions.

25   Accordingly, the treatment notes do not provide a basis for finding harmless error here.

26           Defendant's reliance on *Madison v. Berryhill*, 676 F. App'x 633 (9th Cir. 2017), is

27   misplaced. In *Madison*, the Ninth Circuit found harmless error where the ALJ rejected a particular

28   physician's opinion without explanation, concluding that because the claimant saw the physician

6

1   only twice, and the ALJ thoroughly discussed other medical evidence showing that the claimant

2   thereafter improved and stabilized, the ALJ's error "was inconsequential to the ultimate non-

3   disability determination." *Id.* at 634. In the present case, the record does not suggest that the ALJ

4   implicitly rejected the agency consultants' opinions based on Dr. Bausek's subsequent treatment

5   notes. To the contrary, the ALJ indicated that he fully credited the opinions of Drs. Liss and

6   Garcia. AR 29-31.

7        Moreover, the ALJ's rejection of the agency consultants' "1-2 step instructions" limitation

8   cannot be considered inconsequential to the ultimate non-disability decision here. Inclusion of

9   that limitation in the RFC would have indicated that Plaintiff is restricted to Reasoning Level 1,

10  while the "linen room attendant" and "hand packager" jobs identified by the VE require Reasoning

11  Level 3 and Reasoning Level 2, respectively. *See* DOT 222.387-030 (linen room attendant); DOT

12  920.587-018 (hand packager); *Racette v. Colvin*, No. CV 14-8917 AGR, 2015 WL 6957973, at *4

13  (C.D. Cal. Nov. 10, 2015) (recognizing that "linen room attendant" requires reasoning Level 3 and

14  "hand packager" requires Reasoning Level 2).

15       The DOT describes the requirements for each occupation listed therein, including "the

16  reasoning ability required to perform the job, ranging from Level 1 (which requires the least

17  reasoning ability) to Level 6 (which requires the most)." *Zavalin v. Colvin*, 778 F.3d 842, 846

18  (9th Cir. 2015) (citing DOT, App. C (4th ed. 1991), 1991 WL 688702); *see also Rounds*, 807 F.3d

19  at 1002. Where there is a conflict between the Reasoning Level reflected in a claimant's RFC and

20  the Reasoning Level required to perform a job identified by the VE, that conflict must be resolved

21  by the ALJ before a court may determine whether the ALJ's decision is supported by substantial

22  evidence. *Zavalin,* 778 F.3d at 846-48 (remanding so that ALJ could resolve conflict between

23  RFC corresponding to Reasoning Level 2 and jobs identified by the VE which required Reasoning

24  Level 3); *Rounds*, 807 F.3d at 1003-04 (remanding so that ALJ could resolve conflict between

25  RFC corresponding to Reasoning Level 1 and jobs identified by the VE which required Reasoning

26  Level 2). Thus if the "1-2 step instructions" limitation had been included in the RFC, the ALJ

27  could not have relied on the jobs of "linen room attendant" and "hand packager" to make a non-

28  disability finding without explaining how a claimant limited to Reasoning Level 1 could perform

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

jobs requiring Reasoning Levels 2 or 3.

Accordingly, the Court concludes that the ALJ erred in rejecting the agency consultants'
"1-2 step instructions" limitation without explanation and that the error was not harmless.

**B.      Rejection of Treating Psychiatrist's Opinion**

Plaintiff also argues that the ALJ erred by rejecting the opinions of Plaintiff's treating
psychiatrist, Dr. Bausek, without legally sufficient reasons.  Dr. Bausek completed a Mental
Medical Source Statement on December 4, 2013, diagnosing Plaintiff with Bipolar Disorder and
indicating that he suffers from numerous limitations ranging from "Mild" to "Marked" in his
ability to perform work-related functions.  AR 274-77.  Dr. Bausek stated that these limitations
impair Plaintiff's "ability to function and work," and would result in Plaintiff missing work more
than four days per month.  *Id.*  On July 16, 2004, Dr. Bausek handwrote a note on the bottom of
his original Mental Medical Source Statement stating "No significant changes since 12/4/13."  AR
493.  The ALJ accorded Dr. Bausek's opinions "little weight" and did not include significant
limitations reflected in Dr. Bausek's opinions in the RFC.  AR 31.

"Generally, the opinion of a treating physician must be given more weight than the opinion
of an examining physician, and the opinion of an examining physician must be afforded more
weight than the opinion of a reviewing physician."  *Ghanim*, 763 F.3d at 1160.  "If a treating
physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial evidence in the case record, it will be
given controlling weight."  *Id.* (internal quotation marks, citation, and brackets omitted).  If the
treating physician's opinion is contradicted by the opinion of another physician, the ALJ may
reject the treating physician's opinion but only based upon "specific and legitimate reasons that
are supported by substantial evidence."  *Id.* (internal quotation marks and citation omitted).

The ALJ gave four reasons for rejecting Dr. Bausek's opinions, finding that they are:
(1)  based on Plaintiff's subjective complaints, which the ALJ found to be not entirely credible;
(2) contradicted by Dr. Bausek's own treatment notes; (3) contradicted by Plaintiff's
acknowledged daily activities; and (4) less well-supported by the objective medical evidence than
the opinions of Drs. Liss and Garcia.  AR 31.  As discussed below, the first and fourth reasons do

8

1    not provide sufficient bases for rejecting the opinions of Plaintiff's treating psychiatrist, but the

2    second and third reasons do constitute specific and legitimate reasons, supported by substantial

3    evidence in the record, for discounting Dr. Bausek's findings.

4                    **(1)    Plaintiff's Subjective Complaints**

5            "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

6    claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*,

7    533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted).  This rule of law does not justify the ALJ's

8    rejection of Dr. Bausek's opinions on this record, however.  The ALJ found that "the claimant's

9    statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not

10   entirely credible." AR 27.  However, that finding was based in large part on the ALJ's

11   determination that Plaintiff's *hearing testimony* was not credible because it conflicted with

12   Plaintiff's statements as recorded in Dr. Bausek's treatment notes, which the ALJ apparently

13   accepted.  For example, the ALJ did not credit Plaintiff's testimony that his 50-60 pound weight

14   loss was due to inability to eat because of gastrointestinal problems, pointing out that Plaintiff told

15   Dr. Bausek that he was exercising and dieting to lose weight.  AR 27.  The ALJ also did not credit

16   Plaintiff's testimony that he could not work due to medication side effects, noting that Plaintiff

17   told Dr. Bausek that he was having little or no trouble with side effects.  *Id.*  Having credited

18   Plaintiff's statements to Dr. Bausek in order to discount Plaintiff's hearing testimony, the ALJ

19   could not logically find those same statements to Dr. Bausek to be so lacking in credibility as to

20   undermine Dr. Bausek's opinions.

21           Moreover, it is not at all clear from this record that Dr. Bausek's opinions were based on

22   Plaintiff's self-reporting.  While the ALJ stated that Dr. Bausek's Mental Medical Source

23   Statement was based on "claimant reported symptoms," AR 30, nothing in the Mental Medical

24   Source Statement suggests that when Dr. Bausek was asked to identify "psychological conditions

25   and/or symptoms" affecting Plaintiff, Dr. Bausek did so based solely (or even largely) on

26   Plaintiff's self-reporting, AR 274.  Dr. Bausek checked boxes for "Depression," "Memory

27   deficits," "Easy distractibility," and other conditions and symptoms without indicating whether

28   those findings were based on clinical observation, objective medical evidence, Plaintiff's

                                                    9

1   subjective complaints, or some combination thereof.  Dr. Bausek also wrote a list of "additional

2   symptoms and findings *on mental status examination*," including "manic or hypomanic sxs, rapid

3   speech, flight of ideas, high impulsivity," which clearly were not based on Plaintiff's self-

4   reporting.  AR 274 (emphasis added).

5          Accordingly, rejection of Dr. Bausek's opinions based on an adverse credibility finding

6   was in error.  However, as discussed below, the ALJ proffered other reasons for rejecting Dr.

7   Bausek's opinions which are supported by substantial evidence in the record.

8                  **(2)    Treatment Notes**

9          "A conflict between treatment notes and a treating provider's opinions may constitute an

10  adequate reason to discredit the opinions of a treating physician or another treating provider."

11  *Ghanim*, 763 F.3d at 1161.

12         The ALJ characterized many of Dr. Bausek's treatment notes as conflicting with the

13  significant limitations set forth in Dr. Bausek's Mental Medical Source Statement.  AR 27-29.

14  The ALJ found those treatment notes to "demonstrate the claimant's repeatedly benign clinical

15  presentation, and show the claimant reporting do [sic] doing well on prescribed medications with

16  no significant side effects despite the claimant's several relapses into methamphetamine abuse

17  during his course of treatment and despite the claimant's extremely frequent acknowledged

18  noncompliance with his prescribed medication regimen."  AR 31.

19         Plaintiff does not challenge the ALJ's finding of conflict between Dr. Bausek's treatment

20  notes and opinions.  Plaintiff instead argues that the ALJ improperly rejected Dr. Bausek's

21  opinions based on Plaintiff's noncompliance with treatment.  Pl.'s Motion at 14, ECF 22.

22  However, a careful reading of the ALJ's decision reveals that the ALJ's references to

23  noncompliance with treatment were only in the context of noting how well Plaintiff was doing

24  despite noncompliance.  AR 31.  The ALJ found that Dr. Bausek's notes, reflecting that Plaintiff

25  was doing well even when he did not stick to his treatment plan, undermined Dr. Bausek's

26  opinions that Plaintiff had significant functional limitations.

27         Having reviewed the treatment notes identified by the ALJ, including those at Exhibits 2F,

28  3F, 4F, and 9F, the Court concludes that the ALJ's finding of conflict between Dr. Bausek's

1    treatment notes and opinions constitutes a specific and legitimate reason, supported by substantial

2    evidence in the record, for rejecting Dr. Bausek's opinions.

3                              **(3)    Daily Activities**

4            A conflict between a treating physician's opinion and the claimant's daily activities may

5    justify rejecting the treating physician's opinion.  *Ghanim*, 763 F.3d at 1162.

6            The ALJ provided a thorough summary of Plaintiff's acknowledged daily activities, which

7    include:  performing his own grooming and self-care; taking care of the family dog; preparing

8    daily meals; performing daily household chores such as laundry, vacuuming, and yard work;

9    driving; shopping; walking; watching television; and socializing.  AR 28.  The ALJ also noted that

10   Plaintiff was able to work for several months after his alleged disability onset date, maintain a

11   serious relationship with a girlfriend, look for work, and exercise daily.  *Id.*  The ALJ concluded

12   that these daily activities were inconsistent with the significant limitations indicated by Dr.

13   Bausek's opinions.  AR 28, 31.  Plaintiff does not challenge this reason proffered by the ALJ.

14           The Court concludes that the ALJ's finding of conflict between Plaintiff's acknowledged

15   daily activities and Dr. Bausek's opinions constitutes a specific and legitimate reason, supported

16   by substantial evidence in the record, for rejecting Dr. Bausek's opinions.

17                              **(4)    Record as a Whole**

18           The ALJ's fourth and final reason for rejecting Dr. Bausek's opinions was his conclusion

19   that Dr. Bausek's opinions were "less well-supported by the objective medical evidence present in

20   the record and outlined above and by the evidence present in the record as a whole than the well

21   supported medical opinions of state agency medical consultants Dr. Garcia and Dr. Liss." AR 31.

22   "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while . . . criticizing it

23   with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759

24   F.3d at 1012-13.  The Court concludes that the ALJ's general statement regarding the record as a

25   whole does not constitute a specific and legitimate reason, supported by substantial evidence, for

26   rejecting Dr. Bausek's opinions.  However, as discussed above, the ALJ proffered other reasons

27   for that rejection which are supported by substantial evidence in the record.

28

11

### C.  Appropriate Remedy

Having concluded that the ALJ erred in rejecting the agency consultants' "1-2 step instructions" limitation without explanation, and that the error was not harmless, the Court must determine an appropriate remedy. Plaintiff requests that the case be remanded to the Commissioner for further administrative proceedings. The Court agrees that remand for further proceedings is appropriate here. The record has not been fully developed as to the ALJ's reasons for rejecting the agency consultant's "1-2 step instructions" limitation or the ways in which inclusion of that limitation would affect the ALJ's disability determination.

Accordingly, the Court will grant in part and deny in part Plaintiff's motion for summary judgment and will deny Defendant's cross-motion for summary judgment. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court will reverse the denial of benefits and remand for further administrative proceedings consistent with this order. 42 U.S.C. § 405(g) (sentence four) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## IV. ORDER

  (1)  Plaintiff's motion is GRANTED IN PART AND DENIED IN PART;

  (2)  Defendant's motion is DENIED;

  (3)  The denial of benefits is REVERSED; and

  (4)  The matter is REMANDED to the Commissioner for proceedings consistent with this order.

Dated: March 6, 2018

_____
BETH LABSON FREEMAN
United States District Judge